UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHA GLASS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-cv-0583-JDT-TAB |
| ) | |
| CLARIAN HEALTH PARTNERS, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT (Docket No. 11)**[1]

Plaintiff Marsha Glass brings this action against her former employer, Defendant Clarian Health Partners, Inc. ("Clarian") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.  Ms. Glass contends that Clarian discriminated against her because of her gender in violation of Title VII.  On June 1, 2005, Clarian moved to dismiss Ms. Glass's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that she failed to state a claim upon which relief can be granted.  In support its motion, Clarian suggests that Ms. Glass failed to exhaust her administrative remedies as to her gender discrimination claim and other allegations, as Title VII requires.  Ms. Glass responded to the motion on July 5, 2005, with a reply brief being filed on July 14, 2005.  The motion therefore is fully briefed and ripe for judicial determination.

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

**I.    BACKGROUND**

The following is a limited factual background based upon Ms. Glass's five-page Complaint and Demand for Jury Trial and the parties' briefs and exhibits on the instant motion.

Clarian is a consortium of hospitals and healthcare providers located in Indianapolis. Ms. Glass was employed as an Infant Feeding/Lactation Specialist with Clarian from 2000 to December 2003 or January 26, 2004. She describes her primary responsibility in that position as "educating new mothers (patients of Defendant) and Defendant's Staff on breast feeding." (Compl. ¶ 11.)

Ms. Glass alleges that several doctors at Clarian, including Drs. Neal Simon and Julia Foster and their supervisor, Dr. Jim Lemmons, repeatedly prevented her from carrying out this responsibility. She specifically states that "In fact, on one occasion, Dr. Neal Simon approached me in a very aggressive and hostile manner suggesting that I refrain from educating and counseling new mothers on breast feeding, unless specifically ordered by a physician." (Ex. 1 Pl.'s Mot. S.J. 3.) Ms. Glass also contends that when she tried to enforce Clarian's policy of prohibiting acceptance of gifts from infant formula representatives, she was "reprimanded and threatened with my employment by Dr. Simon." (*Id.*)

In December 2003 Clarian transferred Ms. Glass to a position that precluded her from performing her duties as a lactation specialist. Clarian's reason for the transfer is unclear from the record before the court. In response, Ms. Glass resigned from her

position and filed an appeal of the transfer. Clarian denied the appeal on January 26, 2004. Ms. Glass alleges that she suffered emotional and economic damages as a result of Clarian's actions.

## II.     CHARGE OF DISCRIMINATION

Ms. Glass filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2004 (EEOC Charge No. 240-2005-01516). The charge is attached to Defendant's Brief in Support of Motion to Dismiss as Exhibit 1. In it, Ms. Glass checks boxes indicating that she believed Clarian discriminated against her on the basis of her "sex" in violation of Title VII. She attaches to the charge a statement that describes the following relevant adverse employment actions:

> In December 2003 I was given an involuntary job change which included a stipulation that I would no longer be permitted to work in lactation for Clarian. After an appeal was initiated, Clarian responded on January 26, 2004 and upheld the involuntary change.
>
> \* \* \*
>
> Dr. Julia Foster, Dr. Jim Lemmons and Dr. Neil Simon, as physicians with Clarian Health prohibited education and training to new mothers of a gender specific activity, breast feeding, as part of my employment. Clarian further violated Title VII by forcing a job change and disallowing me to continue my employment with Clarian Health as an Infant Feeding/Lactation Specialist.

(*Id.*)

On January 25, 2005, the EEOC dismissed Ms. Glass's charge as untimely. She filed her complaint with this court on April 21, 2005. In it, Ms. Glass advances what appears to be one claim of gender discrimination, although she also includes allegations related to retaliation and harassment.

## III.   DISCUSSION

Clarian argues that Ms. Glass's complaint, and in particular her gender discrimination claim, is subject to dismissal because the violations alleged therein occurred more than 300 days before she filed her Charge of Discrimination with the EEOC. Clarian also asserts that any claims for retaliation and harassment contained in the complaint must be dismissed because they are beyond the scope of the charge. As a result, Clarian argues that Ms. Glass failed to exhaust her administrative remedies, a bar to bringing her claims before this court.

### A.   This Matter Should not be Converted to a Motion for Summary Judgment

Preliminarily, Ms. Glass requests that the court convert Clarian's motion to dismiss into a motion for summary judgment because Clarian relies on materials extraneous to the pleadings in support thereof. Clarian offers two documents in support of its motion: Ms. Glass's November 19, 2004 EEOC charge and the January 25, 2005 EEOC rejection of the charge. (Exs. 1 & 2 Def.'s Br. Supp. Mot. Dismiss.) Ms. Glass

offers no documents, affidavits, exhibits or otherwise in support of her response.  While she contends that she needs discovery on the issue, she has not identified what information or documents discovery might uncover that would be relevant to the court's determination here.

Fed. R. Civ. P. 12(b) provides: "If on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."  This is not discretionary.  If the defendant submits and the court chooses to consider documents that are not properly part of the plaintiff's pleadings, then the defendant's 12(b)(6) motion must be converted into one for summary judgment and the plaintiff must be given the opportunity to submit additional evidentiary material as well.  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972)).

However, this rule must be read in conjunction with Fed. R. Civ. P. 10(c), which provides that "[s]tatments in a pleading may be adopted by reference . . . in another pleading or in any motion.  A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Rule 10(c) does not mandate that the plaintiff attach exhibits that are referenced in her complaint thereto, and therefore the defendant has the option to attach them when filing a motion to dismiss.  *Venture*, 987

F.2d at 431-432; *Koch v. CGM Group, Inc.*, No. TH 00-216-C M/H, 2001 U.S. Dist. LEXIS 5558 *6 (S.D. Ind. Apr. 3, 2001).  Documents attached by the defendant to a Rule 12(b)(6) motion should be considered part of the pleadings "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture*, 987 F.2d at 431. Courts throughout this circuit have declined to convert motions to dismiss to motions for summary judgment if those two factors are fulfilled, particularly in employment cases such as this.  *See Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 78 (7th Cir. 1992) (approving of the district court's decision not to convert a motion to dismiss to a motion for summary judgment because "none of the facts alleged in [plaintiff's] reply was presented by affidavit or otherwise in evidentiary form, as required by Fed. R. Civ. P. 56(e)"); *Lankford v. Borgwarner Diversified Transmission Prods.,* No. 1:02CV1876-SEB-VSS, 2004 U.S. Dist. LEXIS 4451 *6 (S.D. Ind. Mar. 12, 2004) (EEOC charge attached to a motion to dismiss is considered part of the pleadings); *Risk v. Ford Motor Co.,* 48 F. Supp. 2d 1135, 1137 (S.D. Ind. 1999) (same); Moreover, the Seventh Circuit also has held that a court may consider matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Ms. Glass refers to the documents attached to Clarian's motion to dismiss—the EEOC charge and resulting decision (which are public records)—in her complaint.  At ¶ 8, she states "Plaintiff timely filed a charge of gender discrimination with the Equal

Employement Opportunity Commission."  Paragraph 9 continues, "Plaintiff received an appropriate Notice of Right to Sue less than ninety (90) days before the filing of this complaint."  Clearly, these documents are central to her claim.  And while the complaint "does not include the specifics of the decision or basis upon which the EEOC relied in drawing its ultimate conclusion," (Resp. 1), those specifics are not necessary to the court's determination here and the court has not relied on them, nor does Clarian place them at issue in its motion.  The authenticity of the EEOC documents is not questioned.  Therefore, the court declines to convert the motion to dismiss to a motion for summary judgment and rules as follows.

### B.   Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1356 (3d ed. 2004).  When considering such motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004); *Hentosh v. Herman M. Finch Univ. Of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).  Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## C. Timeliness of EEOC Charge

Timely exhaustion of administrative remedies is a condition precedent to filing suit under Title VII. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 511 (7th Cir. 1996); *Perkins v. Silverstein*, 939 F.2d 463, 469-70 (7th Cir. 1991). "In a deferral state, such as Indiana, a charge must be filed within 300 days of the occurrence of the act that is the basis of the complaint." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994). In part, this limitations period serves to "'protect employers from the burden of defending claims arising from employment decisions that are long past.'" *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir. 1986) (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256-57 (1980)).

The timeliness of Ms. Glass's EEOC charge is uncertain because the parties dispute when Clarian's alleged discriminatory action took place. Clarian asserts that it occurred when Ms. Glass was transferred—sometime in December 2003, and no later than December 31, 2003 (Mot. Dismiss 2), which was more than 300 days before Ms. Glass filed her charge with the EEOC. Ms. Glass admits that she initially learned of the transfer sometime in December 2003, but argues that "the discriminatory conduct was continual through January 26, 2004," (Pl.'s Resp. 3), and that for purposes of determining whether she exhausted her administrative remedies, the EEOC charge should be considered timely filed if filed within 300 days of January 26, 2004 (which it

8

was).  In support of her argument, Ms. Glass points the court to the continuing violation doctrine.

"'The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period.  For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period.'"  *Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir. 1999) (quoting *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992)); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997).  The principle underlying the continuing violation doctrine is "that the plaintiff may not base [a] suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable [discrimination] only in light of events that occurred later, within the period of the statute of limitations."  *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996).

There are three theories that support the application of the continuing violation doctrine, *see Selan,* 969 F.2d at 564, and none apply here.  The first theory stems from cases in which the employer has an "express, openly espoused policy that is alleged to be discriminatory."  *Id.* at 565.  That is not the case here.  The second involves cases in which "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy . . . .  In such cases the challenged practice is evidenced only by a

series of discrete, allegedly discriminatory, acts." *Id.* If the plaintiff knew, or "'with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed' her, she must sue over that act within the relevant statute of limitations." *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 281-82 (7th Cir. 1993). That is not the case here either.

The third continuing violation theory is when an employer's decision-making process takes place over a period of time, making it difficult to determine the actual date of the alleged discriminatory act. In such an instance, the statute of limitations begins to run when the plaintiff knows that the decision has been made. *See Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994). Here, Clarian's decision-making process occurred over the span of about one month. Therefore, theoretically it may have been difficult for Ms. Glass to determine the actual date of the alleged discriminatory act, the decision to transfer her. However, in reality, the facts presented in the complaint suggest that Ms. Glass knew, or at a minimum should have known, that the alleged discriminatory act took place in December 2003 rather than when her appeal of the action became final.

While the transfer may not have been permanent until January 26, 2004, Ms. Glass reacted to the first indication of such (in December 2003) as any reasonable person would—by assuming that it was an adverse employment action to which she must respond. The fact that she subsequently resigned her position and then appealed

the transfer indicates some level of knowledge or belief on her part that the transfer may have constituted a discriminatory act. Ms. Glass notably makes no affirmative statement to this court that she did not know the transfer constituted discrimination, but instead states only that the court may make such an inference at the motion to dismiss stage.

Moreover, while Ms. Glass suggests that the January 26, 2004 denial of her appeal constituted a "fresh act of discrimination" under *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) for which she did timely file an EEOC charge, such a suggestion is contrary to law. The Seventh Circuit has held that an employer's refusal to undo an alleged discriminatory act is not a fresh act of discrimination. "The decision not to reverse an adverse employment decision is not a fresh act of discrimination, an employee cannot toll the limitations period by pursuing grievance proceedings." *Williamson v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). If it were, then an employee could avoid the 300-day limit by filing a series of appeals or fresh requests. Therefore, even if Ms. Glass did not know or could not have known that her transfer constituted discrimination at the time it occurred in December 2003, her appeal does not save her, as it is not a separate act of discrimination for which she could have filed a separate EEOC charge. Accordingly, Ms. Glass's Title VII gender discrimination claim is barred because it was

not the subject of a timely-filed discrimination charge filed with the EEOC, and therefore must be dismissed.

## C. Retaliation and Harassment

Clarian also requests that the court dismiss any claims of retaliation and harassment because they are beyond the scope of the charge filed with the EEOC on November 26, 2004. It is not entirely clear from the face of the complaint whether Ms. Glass is even asserting such claims. The complaint alleges that "Subsequent to her complaint and actions detailed in paragraph 16 herein, the Plaintiff was subjected to retaliatory treatment, including but not limited to discipline, adverse employment changes and ultimate discharge." (Compl. ¶ 18.) It also states that "Defendant subjected Plaintiff to gender discrimination and harassment by allowing Defendant's employees . . . to prohibit Plaintiff from providing education and training to new mothers of a gender specific activity, breast feeding." (*Id.* ¶ 14). However, liberally construing the complaint, as is required at this stage, it may well be that these two references do set forth claims of retaliation and harassment, even if not labeled as such. If so, Title VII requires that Ms. Glass have set the claims out in her EEOC charge as she did with her gender discrimination claim.

As a general rule, a Title VII plaintiff may not bring claims in a lawsuit that were not included in her EEOC charge. *See Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th

Cir. 1995); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, because most EEOC charges are completed by laypersons rather than by lawyers, a plaintiff enjoys considerable leeway in fashioning her charge, as she need not allege in it each and every fact that combines to form the basis of each claim in her complaint. *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992).

Drawing inferences in Ms. Glass's favor at this stage in the litigation, it appears that claims of retaliation and harassment are not beyond the scope of the EEOC charge filed November 19, 2004. The charge generally discusses how Ms. Glass was prevented from doing her job, and by whom. It states that she believed she was harassed by doctors, verbally reprimanded and involuntarily transferred. Specifically, as for retaliation, it is described in the complaint as "discipline, adverse employment changes and ultimate discharge." (Compl. ¶ 18.) All of these elements are addressed in one way or another in the charge. It states that Ms. Glass was "reprimanded," "given an involuntary job change," and "prevented continuing her employment." (Charge 3.) These statements support a claim for retaliation.

As for harassment, it is described in the complaint as Ms. Glass being prohibited from performing her job duties. The charge addresses that as well. It specifically states "Dr. Foster and Dr. Simon created an environment where it was impossible to fulfill my job responsibilities." (*Id.*) It also states, "In fact on one occasion, Dr. Neal Simon approached me in a very aggressive and hostile manner suggesting that I refrain from

13

educating and counseling new mothers on breast feeding . . . ." (*Id.*)  Finally, the charge states that Ms. Glass was "threatened" and subjected to "very aggressive" and "hostile" treatment.  These details are enough to support a claim for harassment.

All that being said, it does not appear that any retaliation and harassment claims, while they may have been addressed in the charge, may move forward.  Like Ms. Glass's gender discrimination claim, they too were not timely filed.  Although the charge does not explicitly so state, all of the alleged discriminatory acts related to these claims occurred in the course of Ms. Glass's employment with Clarian.  Her complaints arose from her being prohibited from performing her work duties while on the job, rather than any actions that may have taken place after she had filed her charge with the EEOC.  For all intents and purposes, Ms. Glass's regular employment with Clarian ended in December 2003 and the complained-of activities appear to have then ceased.  Therefore, in order to have properly exhausted her administrative remedies, she would have had to file her charge with the EEOC within 300 days of December 31, 2003, as previously discussed.  *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 482-83 (7th Cir. 1996) (barring a number of plaintiff's retaliation claims as beyond the scope of her EEOC charge, finding that, unlike the situation where retaliation occurs after the filing of the EEOC charge, the plaintiff suffered the retaliatory acts prior to filing her EEOC charge and should have included them in those administrative charges).  Ms. Glass did

not. Therefore, any claims for retaliation and harassment must also be dismissed for failure to exhaust administrative remedies.

## IV.   CONCLUSION

For the reasons stated above, the court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 11). An appropriate judgment will be entered.

ALL OF WHICH IS ENTERED this 6th day of October 2005.

                                                                            _____

                                                                            John Daniel Tinder, Judge
                                                                            United States District Court

Copies to:

Ellen E. Boshkoff
Baker & Daniels
eeboshko@bakerd.com

Sarah Jane Graziano
Klezmer & Associates
sgraziano@randyklezmer.com

Susan W. Kline
Baker & Daniels
swkline@bakerd.com